# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 18-1772V

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * * <br> HATIM M. SALAH, <br><br> Petitioner, <br><br> v. <br><br> SECRETARY OF HEALTH AND <br> HUMAN SERVICES, <br><br> Respondent. <br> * * * * * * * * * * * * * * * * * * * * * * * * * * | * <br> * <br> * <br> * <br> * <br> * Special Master Jennifer A. Shah <br> * <br> * <br> * Filed: June 5, 2025 <br> * <br> * <br> * <br> * <br> * <br> * |

*Ryan Mahoney*, Mahoney Law Firm, LLC, Glen Carbon, IL, for Petitioner.
*Dorian Hurley,* United States Department of Justice, Washington, DC, for Respondent.

### DECISION ON ATTORNEYS' FEES AND COSTS[1]

On October 19, 2017, Hatim M. Salah ("Petitioner") filed a petition seeking compensation under the National Vaccine Injury Compensation Program ("the Vaccine Program").[2] Pet., ECF No. 1. Petitioner alleged he suffered from transverse myelitis ("TM") as a result of an influenza ("flu") vaccine he received on October 21, 2016. *Id*. at 1. On April 12, 2024, after an entitlement hearing, former Special Master Katherine E. Oler issued a decision denying entitlement, finding that Petitioner had a viral infection approximately eight days before he developed TM symptoms, and "[t]he existence of this infection prevents him from meeting his burden of proof under the second *Althen* prong." *Salah v. Sec'y of Health & Hum. Servs.*, No. 18-1772V, 2024 WL 1925381

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). This means the Decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–34 (2018)) (hereinafter "Vaccine Act" or "the Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

at *1 (Fed. Cl. Spec. Mstr. Apr. 12, 2024).

This case was reassigned to me on August 28, 2024. ECF No. 92. On November 7, 2024, Petitioner filed an application ("Fees App.") for final attorneys' fees and costs. ECF No. 93. Petitioner requests a total of $73,322.95 for attorneys' fees and costs. Fees App. at 2. Petitioner affirmed he did not incur any personal costs. Fees App., Ex. 2. Respondent responded to the motion ("Fees Resp.") on November 21, 2024, stating that "Respondent defers to the court regarding whether the statutory requirements for an award of attorneys fees and costs are met in this case." Fees Resp. at 2. Respondent did not raise any specific objections regarding good faith or reasonable basis but stated:

> [Respondent] calls the Court's attention to the April 4, 2024 recorded telephone status conference and Order, in which Special Master Katherine E. Oler addressed a discrepancy in the medical records that had been filed, ordered petitioner's counsel to file an affidavit describing how the medical records were collected in this case, and indicated that she was requesting this information for the purposes of evaluating attorneys' fees and costs. ECF No. 87. As noted in the April 4, 2024 Order and April 12, 2024 Decision on Entitlement, petitioner's November 16 and 17, 2016 visits with primary care physician James Wade, M.D., were contained in the certified records subpoenaed and filed by respondent as Exhibit I, but not in the records filed by petitioner. *Id.*; ECF No. 88 at 3 n.7. Petitioner's counsel filed the requested affidavit regarding medical record collection on April 18, 2024. ECF No. 89.

Fees Resp. at 6. No reply was filed by Petitioner, but invoices were filed on June 4, 2025. ECF No. 95.

This matter is now ripe for consideration.

**I. Legal Standards**

Section 15(e) (1) of the Vaccine Act permits a special master to award "reasonable attorneys' fees, and other costs." § 300aa–15(e)(1)(A)–(B). Petitioners are entitled to an award of reasonable attorneys' fees and costs if they are entitled to compensation under the Vaccine Act; furthermore, even if they are unsuccessful, they are eligible for such an award so long as the special master finds that the petition was filed in good faith and with a reasonable basis. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008).

If a petitioner is eligible for an award of fees and costs, it is "well within the special master's discretion" to determine the reasonableness of such fees and costs. *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521–22 (Fed. Cir. 1993); *see also Hines v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991) ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs."). Applications for attorneys' fees must include contemporaneous and specific billing records that describe the work performed and the number of hours spent on said work. *See Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313, 316–18 (2008), *aff'd*, No. 99-573V, 2008 WL 2066611 (Fed. Cl. Spec.

Mstr. Apr. 22, 2008).

Reasonable hourly rates for attorneys' fees are determined by looking at the "prevailing market rate" in the relevant community. *See Blum v. Stenson*, 465 U.S. 886, 895 (1984). The "prevailing market rate" is akin to the rate "in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 895 n.11. The petitioner bears the burden of proving that the requested hourly rate is reasonable. *Id.*

### A. Good Faith

The good faith requirement is assessed through a subjective inquiry. *Di Roma v. Sec'y of Health & Hum. Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). The requirement "focuses upon whether [P]etitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Hum. Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as Petitioner had an honest belief that his claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Hum. Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

### B. Reasonable Basis

Unlike the good faith inquiry, a reasonable basis analysis requires more than just evaluating a petitioner's belief in his claim. *Turner*, 2007 WL 4410030, at *6-7. Instead, the claim must be supported by objective evidence. *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017). "[I]n deciding reasonable basis the [s]pecial [m]aster needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery." *Santacroce v. Sec'y of Health & Hum. Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018).

Although the Vaccine Act does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. United States,* 116 Fed. Cl. 276, 283 (2014). The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis…." *Id.* at 286; *see* 42 U.S.C. § 300aa-13(a)(1) (special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion."). The *Chuisano* Court agreed that a petition that relied only on temporal proximity and a petitioner's affidavit did not have a reasonable basis. *Id.* at 290; *see also Turpin v. Sec'y of Health & Hum. Servs.*, No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y of Health & Hum. Servs.*, No. 99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding no reasonable basis when petitioner presented only e-mails between her and her attorney).

The Federal Circuit has clarified that "more than a mere scintilla but less than a

3

preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1346 (Fed. Cir. 2020) (finding petitioner submitted objective evidence supporting causation when she submitted medical records and a vaccine package insert); *see also James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1380 (Fed. Cir. 2021) (finding that "the lack of an express medical opinion on causation did not by itself negate the claim's reasonable basis.").

When determining if a reasonable basis exists, a special master may consider a number of factors, including "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa v. Sec'y of Health & Hum. Servs.*, 138 Fed. Cl. 282, 289 (2018). This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Hum. Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

## II.  Discussion

### A. Good Faith and Reasonable Basis

The determination of good faith and reasonable basis requires a description of this case's procedural history. Again, Petitioner claimed he developed TM caused by a flu vaccination he received October 21, 2016. In support of his petition, Petitioner filed medical records (re-filed as "Amended Exhibit 2"[3]) which purportedly contained all of his primary care records from October 21, 2016 through August 22, 2017. An entitlement hearing was held October 27-28, 2022. During the hearing, testimony revealed that Petitioner had been seen by his primary care physician ("PCP"), James Wade, M.D., on November 16 and 17, 2016, for a viral illness. Records of those two visits, however, were not included in Petitioner's Amended Exhibit 2.

Special Master Oler directed Respondent to subpoena Dr. Wade's records. *See* December 19, 2023 non-PDF Order. The records were filed on April 1, 2024, and *did* include documentation of Petitioner's appointments on November 16 and 17, 2016. Ex. I at 82-84. Ultimately, Special Master Oler concluded that Petitioner had a viral illness on November 16-17, 2016, which predated the onset of his TM symptoms. As noted, Special Master Oler found this illness precluded a determination that Petitioner's TM was caused by the subject vaccination.

On April 4, 2024, Special Master Oler held a status conference with counsel, during which she discussed the missing records from Amended Exhibit 2 and requested that Petitioner's counsel, Mr. Ryan Mahoney, file an affidavit describing how he collected the medical records in this case. ECF No. 87. On April 18, 2024, Mr. Mahoney filed an affidavit stating that he had requested complete records from Dr. Wade's office and filed everything he was given. ECF No. 89. He attached to the affidavit a CIOX Health Invoice dated October 17, 2017, billing for the production of 16 pages of medical records, including 12 electronic pages and 4 paper pages. ECF No. 89, Ex. A. This invoice appears to be consistent with the number and type of pages produced in Petitioner's Amended Exhibit 2. It supports Mr. Mahoney's statement that he produced all of the

---

[3] The original Exhibit 2 was incorrectly bates stamped as Exhibit 3. Petitioner re-filed the exhibit on September 29, 2022, with the label "Amended Exhibit 2."

4

records provided to him by Dr. Wade's office.

In response to Petitioner's fee application, Respondent did not raise any specific objections regarding good faith or reasonable basis, though, as noted, he did highlight the fact that Amended Exhibit 2 was missing important visit notes.[4]  *See generally* Fees Resp.  Based on my review of Mr. Mahoney's affidavit and the attached invoice, which corroborates his account, I do not find that records were deliberately withheld or that the petition was filed in bad faith.  I do note that, generally, counsel has the responsibility to review medical records before filing them and to take reasonable measures to ensure they are accurate and complete. *See Guidelines for Practice* at 15 (revised March 3, 2025) at Section II, Chapter 3, Part A, available at https://www.uscfc.uscourts.gov/sites/cfc/files/Vaccine%20Guidelines%203.03.2025.pdf.

As such, I find that Petitioner filed the petition in good faith and with a reasonable basis.

**B. Attorneys' Fees**

Petitioner requests a total of $46,985.00 in attorneys' fees associated with Mr. Mahoney's work.

1. Reasonable Hourly Rate

As noted, a reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 895 n.11).  In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriguez v. Sec'y of Health & Hum. Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).

*McCulloch* provides the framework for determining the appropriate compensation for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).  The Office of Special Masters has accepted the reasoning of *McCulloch* and issues an annual Fee Schedule based on that decision.[5]

Petitioner requests compensation for Mr. Mahoney at an hourly rate of $350.00 for his work from 2017-2024.  Mr. Mahoney also requests "staff time" at $85.00 per hour for work performed from 2017-2024.

This is Mr. Mahoney's first Vaccine Program case, so his hourly rate has not yet been set. Mr. Mahoney works in the St. Louis metro area.  *See* ECF No. 93-1 at 2.  Attorneys practicing in St. Louis, Missouri have previously been awarded forum rates. *See, e.g.*, *Russell v. Sec'y of Health & Hum. Servs.*, No. 17-161V, 2018 WL 3989530 (Fed. Cl. Spec. Mstr. Apr. 10, 2018).  Mr.

---

[4] I also note that Amended Exhibit 2 appears to be missing page 5, for unclear reasons.

[5] The 2015-2025 Fee Schedules are available at: https://www.uscfc.uscourts.gov/osm-attorneys-forum-hourly-rate-fee-schedules.

Mahoney has been a licensed attorney since 2006. ECF No. 93-1. His requested hourly rate of $350.00 seems reasonable. According to the OSM Fee Schedule, in 2017, Mr. Mahoney, with 11 years of experience, should have billed at an hourly rate in the range of $307.00-383.00. In 2024, Mr. Mahoney, with 18 years of experience, should have billed at an hourly rate in the range of $407.00-509.00.

When determining the appropriate hourly rate within these ranges, I consider the factors set forth in *McCulloch*: experience in the Vaccine Program, overall legal experience, the quality of work performed, and reputation in the legal community and community at large. *See McCulloch v. Sec'y of Health and Hum. Services*, No. 09–293V, 2015 WL 5634323, at *17 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). Mr. Mahoney appears to have substantial overall legal experience, though he has very limited experience in the Vaccine Program. Perhaps owing to his newness to the Program, Mr. Mahoney billed for some non-compensable tasks. For example, he billed time to "Research vaccine claims in U.S. Court of Claims," "Review [] Filing Procedures of Federal Claims," and "Research settlement/judgment results for Transverse Myelitis cases resulting from flu shot." *See* ECF No. 93-2 at 2-3. However, counsel may not "bill time for educating themselves about basic aspects of the Vaccine Program." *Matthews v. Sec'y of Health & Hum. Servs.*, No. 14-1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016). "An inexperienced attorney may not ethically bill his client to learn about an area of law in which he is unfamiliar. If an attorney may not bill his client for this task, the attorney may also not bill the Program for this task." *Carter v. Sec'y of Health & Hum. Servs.*, No. 04-1500V, 2007 WL 2241877, at *5 (Fed. Cl. Spec. Mstr. July 13, 2007).

Nonetheless, because Mr. Mahoney's requested hourly rate is $350.00 for all seven years of litigation, which is within or below the accepted range for the periods at issue, I will grant it.[6] I will similarly grant Mr. Mahoney's requested hourly staff rate of $85.00.

### 2. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Petitioner bears the burden of establishing that the rates charged, hours expended, and costs incurred are reasonable. *Wasson v. Sec'y of Health & Hum. Servs.*, 24 Cl. Ct. 482, 484 (1993). Ultimately, however, it is "well within the [s]pecial [m]aster's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton*, 3 F.3d at 1522. Such a reduction may be made *sua sponte*, even in the absence of enumerated objections from Respondent. *Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 208-09 (2009); *Savin*, 85 Fed. Cl. at 318.

A special master need not engage in a line-by-line analysis of a petitioner's fee application when reducing fees. *Broekelschen*, 102 Fed. Cl. at 729. Instead, the special master may make a global reduction to the total amount of fees requested. *See Hines*, 22 Cl. Ct. at 753 ("special masters have wide latitude in determining the reasonableness of both attorneys' fees and costs"); *Hocraffer v. Sec'y of Health & Hum. Servs.*, No. 99-533V, 2011 WL 3705153 (Fed. Cl. Spec.

---

[6] I decline to set Mr. Mahoney's hourly rate at this time. In this particular case, I conclude Mr. Mahoney's hourly rate is reasonable, given the prolonged nature of the litigation and the fact he does not request an annual rate increase.

Mstr. July 25, 2011), *mot. for rev. denied*, 2011 WL 6292218, at *13 (Fed. Cl. 2011) (denying review of the special master's decision and endorsing "a global – rather than line-by-line – approach to determine the reasonable number of hours expended in this case").

        a. <u>Time Spent Learning about the Vaccine Program and Improper Block Billing</u>

Mr. Mahoney has provided a breakdown of hours billed. The overall hours spent on this matter appear to be largely reasonable. However, multiple entries in the submitted invoices require reduction. As noted above, Mr. Mahoney billed approximately 8.6 hours for non-compensable research. Unfortunately, this was block billed with other activities, such as "Initial Consultation re injuries from flu vaccine," "Draft representation agreement," and "Prepare medical authorizations," making it impossible to parse out the precise amount of time spent on non-billable matters.

Block billing, or billing large amounts of time without sufficient detail as to what tasks were performed, is clearly disfavored in the Program. *Broekelschen*, 102 Fed. Cl. 719, 729 (reducing petitioner's attorneys' fees and criticizing her for block-billing); *see also Jeffries v. Sec'y of Health & Hum. Servs.*, 2006 WL 3903710, at *8 (Fed Cl. Spec. Mstr. Dec. 15, 2006); *Plott v. Sec'y of Health & Human Servs.*, 1997 WL 842543, at *5 (Fed. Cl. Spec. Mstr. April 23, 1997) (special master noted a review of "each and every entry to assess its reasonableness would be fruitless, as in many cases [counsel] has lumped together several tasks, rendering it impossible to assess the reasonableness of any particular task"). Indeed, the Vaccine Program's *Guidelines for Practice* state: "Each task should have its own line entry indicating the amount of time spent on that task. Several tasks lumped together with one time entry frustrates the court's ability to assess the reasonableness of the request."[7]

        b. <u>Administrative Tasks</u>

About 8.2 hours was billed for clerical or administrative tasks, at both attorney and staff rates. These tasks included: "Prepare Notice of Filing Objective Evidence," "File Amended Exhibit 22 [sic]," "Number and organize all medical records and bills for filing with Court; prepare and file Exhibit List, Exhibit List (Supplemental) and Statement of Completion, including upload all documents for e-filing," and "Prepare Notice of Filing of Responsive Expert Report; prepare Responsive Expert Report for filing." *See* ECF No. 93-2 at 4-10.

In the Vaccine Program, this type of administrative work "should be considered as normal overhead office costs included within the attorneys' fee rates." *Rochester v. U.S.*, 18 Cl. Ct. 379, 387 (1989); *Dingle v. Sec'y of Health & Human Servs.*, No. 08-579V, 2014 WL 630473, at *4 (Fed. Cl. Spec. Mstr. Jan. 24, 2014). "[B]illing for clerical and other secretarial work is not permitted in the Vaccine Program." *Mostovoy v. Sec'y of Health & Hum. Servs.*, No. 02-10V, 2016 WL 720969, at *5 (citing Rochester, 18 Cl. Ct. at 387).

---

[7] *Guidelines for Practice* at 76 (revised March 3, 2025) at Section X, Chapter 3, Part B(1)(b)), available at https://www.uscfc.uscourts.gov/sites/cfc/files/Vaccine%20Guidelines%203.03.2025.pdf.

c. Possible Clerical Error

Petitioner's counsel also billed 15 hours on August 16, 2023, to "Review entitlement hearing transcripts." ECF No. 93-2. This is excessive. Fifteen hours is longer than the total time spent conducting the two-day entitlement hearing,[8] so I conclude this was a clerical error.

Considering all these issues together, I will apply an overall 10% reduction, or $4,698.50, to Petitioner's requested attorneys' fees.

Accordingly, I award Petitioner a total of **$42,286.50** in attorneys' fees.

**C. Reasonable Costs**

Petitioner requests a total of $26,337.95 in attorneys' costs: $448.02[9] for medical record requests; $206.83 for postage/FedEx; $113.60 for photocopy expenses; $1.70 for PACER fees; $311.00 for costs associated with Mr. Mahoney's admission to the U.S. Court of Federal Claims Bar; $400.00 for the Court's filing fee; $24,150.00 for Dr. Simpson's expert costs; and $706.80 for the entitlement hearing transcript. See ECF No. 93-2. I will grant the costs associated with postage, photocopying, PACER, the entitlement hearing transcript, and the Court's filing fee as they are normal litigation expenses. I discuss the remaining costs below.

1. David M. Simpson, M.D.'s Expert Costs

Dr. Simpson billed 33 hours, at an hourly rate of $700.00, for his expert reports, medical literature review, and participation in the entitlement hearing. See ECF No. 93-5. Mr. Mahoney requests $24,150.00 for Dr. Simpson's participation in this case. Dr. Simpson is board certified in neurology, electrodiagnostic medicine, clinical neurophysiology, and neuromuscular medicine. ECF No. 93-5 at 1. Dr. Simpson was previously denied his requested hourly rate of $700.00 for opining "outside his area of expertise, since he lacks the requisite immunological background to credibly address an issue that proved central to the claim's resolution." *Block v. Sec'y of Health & Hum. Servs.*, No. 19-969V, 2022 WL 10510188, at *2 (Fed. Cl. Spec. Mstr. Aug. 31, 2022). In *Block*, Chief Special Master Corcoran reduced his hourly rate in that case to $400.00. *Id*. The Chief Special Master in a subsequent decision awarded Dr. Simpson an hourly rate of $500.00. *See Velasquez v. Sec'y of Health & Hum. Servs.*, No. 19-1703V, 2024 WL 2186367, at *4 (Fed. Cl. Spec. Mstr. Apr. 16, 2024). More recently, Special Master Dorsey denied a petitioner's request to grant Dr. Simpson's $700.00 hourly rate once again. *See Brancheau v. Sec'y of Health & Hum. Servs.*, No. 21-1209V, 2024 WL 4930700, at *3-4 (Fed. Cl. Spec. Mstr. Nov. 5, 2024). Petitioner has provided no justification for an increase in Dr. Simpson's hourly rate other than providing his resumé; I see no reason to disturb his previously awarded hourly rate of $500.00.

---

[8] Mr. Mahoney spent 8.5 hours on October 27, 2022 for "Entitlement hearing day 1; Prep for Entitlement hearing day 2; Review expert reports on medical records." ECF No. 93-2 at 8. Mr. Mahoney spent 4.5 hours on "Entitlement hearing day 2." *Id.*

[9] Mr. Mahoney's paralegal informed my law clerk via email that there was a duplicate entry for a medical request for $113.36; therefore, the total cost associated with medical record requests should be $334.66.

Although Petitioner is requesting a total of $24,150.00, Dr. Simpson only submitted invoices for 33 hours of work at $700.00/hour, totaling $23,100.00. *See* ECF No. 93-5. I believe the discrepancy can be accounted for by the billing entry 160, which states there is a "prior balance of $1,050." ECF No. 93-2 at 10; *see also* ECF No. 93-5 at 7. I presume that Dr. Simpson previously engaged in work for which he billed $1,050.00, but the nature of the work is not explained in the submitted records. I note that if counsel had provided all receipts and checks issued in this case, this matter could have been clarified. Based on the record before me, I will award $16,500.00[10] for Petitioner's expert costs.

> 2. Costs Associated with Mr. Mahoney's Admission to the U.S. Court of Federal Claims Bar

Mr. Mahoney billed $311.00 for his admission to the U.S. Court of Federal Claims ("USCFC") Bar. This is comprised of two $15.00 payments to the Supreme Court of Illinois for a Certificate of Good Standing and $281.00 for the USCFC Bar admission fee. The costs for admission to the USCFC Bar is non-compensable. *Raymo v. Sec'y of Health & Hum. Servs.*, 2016 WL 7212323, at *24 (denying costs associated with obtaining counsel's certificate of good standing from the State Supreme Court); *Ceballos v. Sec'y of Health & Hum. Servs.*, No. 99-97V, 2004 WL 784910, at *15 (Fed. Cl. Spec. Mstr. Mar. 25, 2004) (the admission fee for the USCFC bar is not recoverable).

I award Petitioner a total of **$18,263.59** in attorneys' costs.

### III. Conclusion

Accordingly, I **GRANT** Petitioner's application and award the following:

Petitioner is awarded attorneys' fees and costs in the total amount of **$60,550.09**, to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this decision.[11]

**IT IS SO ORDERED.**

                                           **s/ Jennifer A. Shah**
                                           Jennifer A. Shah
                                           Special Master

---

[10] 33 hours x $500.00 per hour = $16,500.00.

[11] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.